Filed 12/12/13  P. v. Velasquez CA2/3

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE, | B248857 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BA405723) |
| v. | |
| RENE VELASQUEZ, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Bob S. Bowers Jr., Judge.  Affirmed.

James C. Huber, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

Defendant and appellant, Rene Velasquez, appeals from the judgment entered following a court trial which resulted in his conviction of the serious (Pen. Code, § 1170, subd. (h)(3))[1] and violent (§ 667.5, subd. (c)) felony of second degree robbery (§ 211) of a victim 65 years of age or older (§ 667.9, subd. (a)) and his stipulation to the allegations he previously had been convicted of five felonies for which he served terms in prison or county jail pursuant to section 667.5, subdivision (b). The trial court sentenced Velasquez to nine years in prison. We affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

1. *Facts.*

   a. *The robbery.*

At approximately 11:00 a.m. on December 11, 2012, 70-year-old Jafar Vaghari was riding on a bus in the vicinity of Broadway and 59th Place.[2] When the bus reached his stop and Vaghari got off, Velasquez also got off the bus and assisted Vaghari with his packages. However, after the two men had stepped away from the bus, Velasquez attacked Vaghari, knocked him down, then reached into Vaghari's right front pants pocket. Although Vaghari resisted by holding Velasquez's arm, Velasquez was able to take from Vaghari $30 in cash and a number of documents bearing his signature.[3]

Jessie Lee Ford was coming out of the alley next to El Eden Market when he saw Velasquez put his hands in Vaghari's jacket pocket and remove his wallet. As Velasquez was attacking Vaghari, Ford heard Vaghari telling Velasquez to "stop" and to not "do it." Ford also heard some individuals in a car tell Vaghari to not "let him do that." However, Velasquez was able to take Vaghari's wallet. He then headed down the alley and began to go through the wallet, discarding papers and other items he did not want.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] Vaghari previously had been convicted of soliciting a prostitute.

[3] Although Vaghari knew the total amount of money taken from his pocket was $30, he could not remember the various denominations of the bills.

Los Angeles Police Department Detective Michael Arteaga was on patrol in a marked car near the intersection of 59th Place and Broadway at approximately 11:15 a.m. on December 11, 2012. As he drove past the intersection, a group of civilians flagged him down. The detective made a left hand turn and approached the group to see "what the commotion was about." As he rolled down his window, a number of individuals approached his car and, as a result of what they told him, the detective headed west on 59th Place. As he was driving, Arteaga saw another individual pointing at the alley which ran "north-south . . . west of Broadway at 59th Place." The detective entered the alley and, as he drove north, observed Velasquez running north. Arteaga followed Velasquez, requested back-up units and observed Velasquez throwing items onto the ground. Then, for some reason Velasquez stopped running. At that point, Arteaga stopped his patrol car, pulled out his weapon, got out of the car and "proned [Velasquez] out." When back-up units arrived, the officers took Velasquez into custody. The $30 taken from Vaghari was not found on Velasquez's person.

Los Angeles Police Officer Christian Wecker and his partner, Officer Lopez, were two of the officers who responded to Arteaga's request for backup. When the officers arrived at 59th Place and Broadway, Wecker saw Arteaga detaining Velasquez. While Lopez assisted Arteaga as he took Velasquez into custody, Wecker searched the alley for paperwork and other items Velasquez had discarded. Although there were some areas the officer was unable to search because they were surrounded by fences with locked gates, one item recovered by the officer consisted of a four- page document with Vaghari's name on it. Wecker also found an interim driver's license issued by the California Department of Motor Vehicles. Wecker did not find any money.

As he was searching the alley, Wecker was approached by Vaghari, who told the officer he had been robbed. Vaghari then pointed to Velasquez, who was standing outside a police car at the time, and spontaneously told Wecker that Velasquez was the "one that robbed [him]."[4]

_____

[4] According to Vaghari's earlier testimony, "[t]he police did not talk to [him]."

Los Angeles Police Department Detective Guillermo Medina was the investigating officer in the case involving Vaghari and Velasquez. The day after the robbery, December 12, 2012, Medina went to El Eden Market and spoke with the proprietor of the business, Luis Gonzalez. Gonzalez provided Medina with a copy of the video footage taken from outside his store. Medina, himself, "download[ed]" the video off Gonzalez's system on to a "thumb drive."

Gonzalez testified that on December 11, 2012, he owned El Eden Market at 5931 South Broadway. Just after 11:00 a.m. that day, Gonzalez saw "two people fighting outside and one [of the men] was screaming." The man who was screaming was "an older man with white hair [who was wearing] glasses." The second man, who Gonzalez identified as Velasquez, "was going through [the older man's] pockets and taking his jacket." When a duplicate of the video recorded at El Eden Market was played for Gonzalez, he indicated it showed "the altercation [he had] just described."

b. *The prior convictions and prison terms.*

After waiving his right to a trial on the alleged prior convictions and prison or jail terms, Velasquez stipulated he had "suffered [five] prior prison [or jail] commitments, within the meaning of . . . section 667.5[, subdivision] (b)(1)." Velasquez admitted he was "incarcerated for these [five] priors, and that [he] did not remain custody free or crime free for a period of [five] years following [his] release from each of the commitments." Velasquez then admitted having been convicted of and serving terms in prison or jail for each of the individually alleged crimes. Both counsel for Velasquez and the prosecutor joined in Velasquez's waiver of his right to a trial and his admissions of the prior convictions and prison or jail terms.

2. *Procedural history.*

Following a preliminary hearing, an information was filed on February 21, 2013 in which Velasquez was charged with one count of the violent (§ 667.5, subd. (c)) and serious (§ 1192.7, subd. (c)) felony of second degree robbery (§ 211). It was further alleged the victim of the offense was 65 or more years of age (§ 667.9, subd.(a)) and any custody time for the offense was to be served in state prison (§ 1170, subd. (h)(3)).

4

Finally, it was alleged Velasquez had suffered five prior felony convictions "and that a term [in prison or county jail had been] served [for each offense] as described in . . . section 667.5 . . . , and that [Velasquez] did not remain free of prison custody for, and did commit an offense resulting in a felony conviction during[] a period of five years subsequent to the conclusion of [each] term."

At proceedings held on February 21, 2013, Velasquez pleaded not guilty to the count alleging second degree robbery and denied all the remaining allegations.

Before trial had begun, on April 11, 2013 Velasquez made a *Marsden*[5] motion. Velasquez, who was under the impression Vaghari might not testify, indicated his counsel had told him he did not have the right to face his accuser at trial. Defense counsel then explained he had told Velasquez that, as Vaghari had testified at the preliminary hearing, if the People could show he was unavailable to testify at trial, they could "proceed on the [preliminary hearing] transcript." After the trial court informed Velasquez his counsel was correct and that, under certain circumstances, the district attorney could read the preliminary hearing testimony into evidence, Velasquez indicated his counsel had also indicated he could not have counsel removed from his case "because [the] case had progressed too far." Velasquez continued, stating his counsel had informed him that "what [he] consider[ed] to be very important video footage evidence was no longer obtainable due to ownership change of a business located at the crime scene. [Velasquez] believe[d] this footage [was] still obtainable and [that his attorney's] investigator [had] terminated his investigation prematurely." Velasquez indicated it was "for these reasons [he was] request[ing] [the] court to remove [his counsel] and appoint new counsel . . . ."

With regard to the video tape recorded at El Eden Market, defense counsel indicated he had shown a copy of the tape to Velasquez on December 26, 2012. When counsel later visited Velasquez in jail on March 6, 2013, Velasquez indicated something might have been recorded which had not been provided to counsel or his investigator.

---

[5]     *People v. Marsden* (1970) 2 Cal.3d 118.

Accordingly, counsel "dispatched an investigator that day out to the establishment to see if the video still existed, and [the store employees indicated] it had been taped over." The video tape had not been preserved, which counsel believed was common.

When Velasquez then informed the trial court his counsel had told him that, due to the late date in the proceedings, it was unlikely the court would remove him, the trial court responded it would not change lawyers 11 days before trial "unless there [was] a good reason" to do so. Here, counsel had simply been informing Velasquez of laws and facts which the court believed Velasquez did not wish to hear. The court continued: "[Counsel] is telling you the basics. I've already dealt with the issue that you've already faced your accuser at the preliminary hearing [and your counsel] . . . is right, that quite often tapes are taped over. And he's also right, that at this late stage of the case, we don't just change lawyers, unless there is a very good reason." The trial court concluded defense counsel was simply telling Velasquez the truth and it was "not going to remove him for that reason."

After the trial court denied his *Marsden* motion, Velasquez indicated he wished to represent himself for the remainder of the proceedings. However, after the trial court refused to grant him a continuance to prepare for trial, Velasquez changed his mind and indicated he wished to withdraw his request to proceed in propria persona.

The trial court informed Velasquez he faced a term of 11 years in prison. However, if he wished to enter a plea to the robbery, the People were offering him a sentence of only three years. Velasquez, however, declined the offer and indicated he wanted to go to trial.

At proceedings held on April 30, 2013, Velasquez indicated he wished to waive his right to a jury trial and to instead be tried by the court. After the prosecutor took the appropriate waiver, the trial court found Velasquez had "expressly, knowingly [and] understandingly waived his right to a jury trial in this matter."

After hearing the evidence, listening to counsel's arguments and reviewing the applicable jury instructions, the trial court found Velasquez guilty of second degree robbery in violation of section 211 as charged in count 1 of the information. The trial

court further found the allegation the victim was 65 years of age or older pursuant to section 667.9, subdivision (a) to be true. Finally, the trial court, after Velasquez had stipulated to the allegations, found he had suffered five prior felony convictions for which he served terms in county jail or state prison pursuant to section 667.5, subdivision (b).

On May 17, 2013, the trial court sentenced Velasquez to the middle term of three years in state prison for his conviction of second degree robbery as alleged in count 1 of the information.[6] With regard to the finding the robbery was committed against a person who was 65 years of age or older within the meaning of section 667.9, subdivision (a), the court imposed a consecutive term of one year. Finally, with regard to the findings Velasquez previously had been convicted of five felonies for which he served terms in prison or county jail within the meaning of section 667.5, subdivision (b), the court imposed five consecutive one-year terms. In total, the court sentenced Velasquez to nine years in state prison.

With regard to fees and assessments, the court ordered Velasquez to pay a $300 restitution fine (§ 1202.4), a stayed $300 parole revocation restitution fine (§ 1202.45), a $40 court operations assessment (§ 1465.8, subd. (a)(1)), a $20 DNA assessment (Gov. Code, § 76104.7, subd. (a)(1)), a $20 state court construction assessment (Gov. Code, § 70372), a $40 conviction assessment (Gov. Code, § 70373), a $40 state penalty assessment (§ 1464) and an $8 state criminal surcharge (§ 1465.7). The trial court then awarded Velasquez presentence custody credit for 157 days actually served and 23 days

---

**6** Although the reporter's transcript indicates the trial court imposed a term of "4" years, as the court had emphasized it intended to impose the middle term which, pursuant to section 213, subdivision (a)(1) and (2) is three years, both the minute order and abstract of judgment reflect a sentence of three years and the trial court had previously stated it was going to impose a total term of nine years, which would require it to impose a three-year term for Velasquez's conviction of robbery, we presume the number "4" is a typographical error.

of conduct credit, for a total of 180 days.[7]  Finally, at Velasquez's request, the trial court recommended that he be sent to fire camp.

Velasquez filed a timely notice of appeal on May 17, 2013.

## CONTENTIONS

After examination of the record, appointed appellate counsel filed an opening brief which raised no issues and requested this court to conduct an independent review of the record.  By notice filed September 11, 2013, the clerk of this court advised Velasquez to submit within 30 days any contentions, grounds of appeal or arguments he wished this court to consider.  No response has been received to date.

## REVIEW ON APPEAL

We have examined the entire record and are satisfied counsel has complied fully with counsel's responsibilities.  (*Smith v. Robbins* (2000) 528 U.S. 259, 279-284; *People v. Wende* (1979) 25 Cal.3d 436, 443.)

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


KITCHING, J.


We concur:


KLEIN, P. J.            ALDRICH, J.

---

[7]      The reporter's transcript correctly indicates the trial court awarded Velasquez presentence custody credit for 157 days actually served and 23 days of conduct credit.  It then indicates he was given a total of "208 days" of credit.  However, since the minute order and abstract of judgment show the correct total of 180 days, we attribute the incorrect total of 208 days to a simple error in addition or a typographical error.